Opinion of the Court, by
Ch. J. Boyle.
THIS is a controversy for land claimed by the parties under adverse titles derived from the commonwealth, and turns exclusively upon the validity of the following entry, under which the complainants claim:
“December 24th, 1782—Thomas Bell enters 4,000 acres of land on a treasury warrant, No. 7,558, on Turkey-Foot fork, or south South fork of Eagle creek, beginning at an ash and a beech, the beech marked R. P. corner to James Gibson’s entry of 657 acres; thence southeast 1,131 poles; thence south-west 565 poles, and thence at right angles for quantity.”
Eagle creek may be assumed to have been well known that name at the date of this entry. It has two principal branches, one of which is represented on the connected plat made out by the surveyor in this case, as the North fork; the other, from its relative situation to the North fork, may, with propriety; be denominated the South fork; and both together, at their confluence, constitute Eagle creek. The South fork, about two and a half or three miles above its junction *243 with the North fork, ramifies itself into three streams, which, at their junction, from their supposed resemblance to a turkey’s foot, obtained, shortly before the date of the entry in question, the name of the Turkey-Foot, as some of the witnesses say, or of the Turkey-Foot Fork, as others of the witnesses depose. Those of the witnesses who knew the place at the junction of the three branches of the South fork by the name of the Turkey-Foot, say, that the whole South fork below that place, to its junction with the North fork, was called the Turkey-Foot fork. The other witnesses who knew the place at the junction of the three branches of the South fork by the name of the Turkey-Foot fork, say, that there was no other part of the stream known to them by that name. The ash and a beech tree marked as described in the entry, are proved to have stood at the junction of those three streams, before and after the date of the entry; but the proof does not show that they possessed any notoriety. They could, therefore, have been found only by the aid of the call for “ the Turkey-Foot fork, or South fork.” If this call can be understood as referring a subsequent locator to the junction of the three branches, in exclusion of all other places, there certainly could have been no difficulty in finding the beginning trees; but, on the contrary, if it is to be interpreted as referring to the South fork indefinitely, for the place where the beginning trees were to be found, it would be imposing upon a subsequent locator an unreasonable degree of labor, to require him to search for them, especially as the entry has not indicated how nigh the stream, or on which side of it, they were to be found. That the latter is the true interpretation of the entry, we think there can be but little doubt. When the locator called for "the Turkey-Foot fork, or South fork," he either meant to describe one or other of two objects, or he meant to describe the same object by one or other of the two names he has used. The former cannot be admitted to have been his intention, without rendering the entry a nullity upon its face, and if the latter be his meaning, then there is no difficulty in saying that he did not intend to describe the place at the junction of the three branches of the South fork, in exclusion of all other parts of that stream; for whatever ambiguity may arise from the contrariety of evidence in relation to the application of *244 the call for the Turkey-Foot fork, there is none can arise, either from the testimony in the cause or from the nature of the object, in regard to the application of the call for the South fork. There is a stream which by nature is a south fork, and the call must be understood to apply to that, and to every part of it equally.
The decree of the circuit court dismissing the complainant’s bill, is therefore correct, and must be affirmed with costs.